Rocco J. Cardone v. Commissioner. Frances Cardone v. Commissioner.
Cardone v. Commissioner
Docket Nos. 19920, 19936.
United States Tax Court
1949 Tax Ct. Memo LEXIS 80; 8 T.C.M. (CCH) 832; T.C.M. (RIA) 49223; September 8, 1949
*80 1. A partnership between petitioners, their mother and a sister, held not valid as to the mother and sister. Inclusion of five-sixths of the income therefrom in the taxable income of Rocco J. Cardone for 1943 and 1944 approved. Stanley G. Falk, Esq., for the petitioners. Sheldon V. Ekman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income taxes as follows: Docket No.
Year
Amount
19920
1943
$5,792.36
1944
6,389.79
19936
1943
1,556.10
The questions to be determined are whether the Commissioner erred (1) in including in the taxable income for 1943 and 1944 of the petitioner, Rocco J. Cardone, five-sixths of the income of a certain partnership, and (2) in including in the taxable income for 1943 *81 of each petitioner the amount of $5,358.32 designated as salary. Findings of Fact The petitioners are brother and sister. They reside in Niagara Falls, New York. Each filed a return for the taxable years involved with the collector of internal revenue for the 28th district of New York. In 1926, when he was about 16 years of age, Rocco J. Cardone commenced to work for Suspension Bridge Bottling Co., Ltd., a corporation engaged in the business of wholesale beer distribution and the manufacture of soft drinks, at Niagara Falls, New York. The business originally was owned by his father. In about 1933 Rocco became secretary of the corporation and at that time received as a gift from his father a few shares of the stock of the corporation. In about 1939, because of failing health, the father transferred to Rocco as a gift additional shares, so that Rocco thereafter held 339 shares and thereupon became president of the corporation. The father died on June 6, 1942. About 1933 Frances Cardone entered the employ of the corporation. She devoted all her time to its office work, including bookkeeping. When she became secretary of the corporation, about 1940, she received from her father *82 as a gift four shares of the stock of the corporation. The mother of petitioners, Guiseppina Cardone, since about 1933, held three shares of the stock of the corporation. Carmella Cardone, sister of petitioners, was employed by the corporation in 1941 or 1942. She devoted her full time in assisting her sister Frances in the bookkeeping and other general office work. For the year 1942, she received wages of $828 from the corporation. In 1942 the charter of the corporation expired and a new corporation was formed on February 26, 1942, under the same name with authorized capital of 300 shares, of which 293 shares were issued to Rocco, four shares to Frances and three shares to their mother. * Rocco was president of the corporation, Frances secretary and treasurer, and the mother vice-president. The business of the predecessor corporation was turned over to the new corporation. At a special meeting of the stockholders of the new corporation held on April 14, 1943, a *83 resolution was adopted, in part, as follows: "* * * IT IS RESOLVED that this corporation be dissolved pursuant to Article 10 of the Stock Corporation Law. IT IS FURTHER RESOLVED that this corporation sell and convey to Rocco Cardone in consideration of One Dollar ($1.00) and other good and valuable consideration, all the fixtures, machinery, equipment, trucks, motor cars and chattels in use in connection with the operation of its business. "IT IS FURTHER RESOLVED that this corporation sell and convey to Rocco Cardone, Guiseppina Cardone, Frances Cardone, Carmella Cardone, Antoinette Cardone and Sarah Cardone, in consideration of One Dollar ($1.00) and of the surrender to the corporation of all of the outstanding shares of stock owned and held by any of said persons, the assumption by the said persons of all of the outstanding obligations of the corporation." * * *
By a bill of sale dated April 14, 1943, the corporation, in consideration of one dollar and more and other good and valuable consideration, sold and transferred to Rocco Cardone "all the fixtures, machinery, equipment, trucks, motor cars and chattels in use in connection with the operation of its business," as *84 follows: Office furniture, fixtures and business machines Ice machine Cooler Carbonator Bottling labeler, washer and filler and machinery and equipment All fixtures and equipment used in handling and filling barrels Kegs, bottles and containers Packard motor car Ford truck Dodge truck, 1938 International truck 2 Dodge trucks, 1936 Rocco did not pay anything to the corporation for the above-listed assets. The corporation on the same date, as seller, entered into an agreement with "Rocco Cardone, Guiseppina Cardone, Francis [Frances] Cardone, Carmella Cardone, Antoinette Cardone, and Sarah Cardone, copartners doing business under the firm name and style of 'Suspension Bridge Bottling Company', all of 1447 Ferry Avenue, Niagara Falls, New York," as buyers, wherein the corporation, as seller, sold and transferred to the buyers all the property and assets, both tangible and intangible, of whatsoever nature and description and wheresoever situate of the seller, except the machinery, equipment, motor cars, trucks, fixtures and chattels sold and transferred to Rocco Cardone. The buyers agreed to pay and discharge completely in due course all debts and liabilities *85 of the business of every kind and nature, to assume, perform and liquidate all of its outstanding contracts and obligations, and to indemnify and hold the seller harmless from and against all claims, demands, liabilities, costs and expenses, then existing or thereafter arising, in connection with any such debts. The balance sheet of the corporation as of April 15, 1943, was as follows: ASSETS
Cash
$12,292.13
Accounts Receivable
9,849.74
Inventory
2,070.78
Capital Assets - Net
2,325.64
Bottles and Cases
7,496.96
Prepaid Expenses
945.82
Total Assets
$34,981.07
LIABILITIES
Accounts Payable
$15,734.27
Notes Payable
37.68
Customers Deposits
2,029.50
Accrued Payroll
295.67
Due Officers
10,716.64
$28,813.76
Capital Stock
6,818.48
Deficit
(651.17)
Total Liabilities
$34,981.07 The items shown in the above balance sheet: "Capital Assets - Net" and "Bottles and Cases" represented the property transferred by the corporation on April 14, 1943, to Rocco. On May 13, 1943, a certificate of dissolution of the corporation was filed with the Department of State of New York. On May 18, 1943, Rocco, Guiseppina, Frances, Carmella, Antoinette *86 and Sarah Cardone entered into an agreement, which provides, in part, as follows: "WHEREAS, on April 14th, 1943 the parties hereto purchased all the property and assets, both tangible and intangible including all the rights, franchises, privileges and good will, excepting the chattels referred to in the next following recital, of Suspension Bridge Bottling Company Ltd. "WHEREAS, on April 14th, 1943 the parties hereto leased certain chattels from Rocco Cardone, they being the same chattels purchased on April 14th, 1943 by Rocco Cardone from Suspension Bridge Bottling Company Ltd. "WHEREAS, the parties hereto are desirous of becoming partners in the business formerly conducted by the Suspension Bridge Bottling Company Ltd. at 831 Linwood Avenue, Niagara Falls, New York, which said corporation on the 13th day of May, 1943, filed a certificate of dissolution and complied with Section 105 of Stock Corporation Law, namely the manufacture, rectifying and sale of nonalcoholic beverages, and the sale and distribution of malt beverages as allowed and permitted under a wholesale beer license. "WHEREAS, the parties hereto on May 18th, 1943 filed a certificate in the Niagara County Clerk's *87 office of doing business under the firm name and style of 'Suspension Bridge Bottling Company'. "WHEREAS, the parties hereto as copartners intend to apply at once to the New York State Alcoholic Beverage Control Board for the issuance of a 'Wholesale Beer License. "NOW THEREFORE, it is mutually agreed as follows: "FIRST: The firm name of the said partnership shall be Suspension Bridge Bottling Company. 'SECOND: The parties hereto shall, as partners, engage in the business of manufacturing, rectifying and selling nonalcoholic beverages and the selling and distribution of malt beverages as allowed and permitted under a wholesale beer license, for a term of five (5) years from June 1st, 1943." * * *
No new capital was contributed to the partnership by any of the named partners. Antoinette and Sarah Cardone, named in the partnership agreement, are sisters of petitioners. At the time the agreement was executed Antoinette was an employee of Auto-Lite Company and Sarah was an employee of National Biscuit Company. Neither of them ever rendered any services to the two predecessor corporations or to the partnership. Petitioners also had two other sisters, Josephine, about *88 19 years of age in 1943, and Santa, who was also a minor and who died on July 29, 1942 or 1943. The mother of petitioners rendered no services whatsoever to the business either in its corporate or partnership form. The execution of the partnership agreement brought about no change in the control and management of the business. Rocco, as manager, continued to manage and control the business and devoted all his time to it as theretofore. Frances performed and rendered the same services to the business she had rendered prior to the agreement. Carmella continued to perform general office duties under the direction of Frances. Rocco and Frances alone had the right to sign partnership checks. Neither Rocco, nor any of his sisters, withdrew any of their respective shares of the profits of the business for 1943 or years subsequent thereto. Rocco drew a salary of $200 a month. The Commissioner determined that the partnership operating under the name of Suspension Bridge Bottling Company in 1943 and 1944 consisted of Rocco Cardone and Frances Cardone with respective interests of five-sixths and one-sixth and that the other members of the Cardone family whose names appear on the partnership *89 agreement, were not recognizable as partners for Federal income tax purposes. Accordingly, he included five-sixths of the income of the partnership as adjusted by him for 1943 and 1944 in the taxable income of Rocco Cardone for the respective years. The item "Due Officers" of $10,716.64, shown as a liability on the balance sheet of the corporation as of April 15, 1943, heretofore set forth, represents wages due Rocco and Frances accrued on the books of the corporation over a period of years, but unpaid and retained by the corporation in order to conduct its business. The amount was not paid in cash by the corporation to Rocco and Frances in 1943 at the time of dissolution but was transferred by Rocco and Frances to the partnership. The Commissioner included one-half of the amount, or $5,358.32, in the taxable income of Rocco and Frances, respectively, for the year 1943, as salary. His explanation for the adjustment is as follows: "The amount of $5,358.32 invested in the partnership, Suspension Bridge Bottling Company, which was unpaid wages credited to you on the books of the predecessor corporation also operating under the name of Suspension Bridge Bottling Company, is determined *90 to be a payment by the corporation of such accrued wages and, as such, constitutes taxable income within the provisions11 of the Internal Revenue Code." In its corporation and declared value excess-profits tax returns for 1940, 1941 and 1942, the corporation, Suspension Bridge Bottling Co., Ltd., claimed deductions for "Compensation of officers" as follows: Rocco Cardone
Frances Cardone
Year
President
Sec'y & Treas.
Total
1940
$1,040
$1,040
$2,080
1941
5,010
1,440
6,450
1942 (1/1 to 4/30)
$1,810
$ 845
$2,655
1942 (5/1 to 12/31)
4,500
6,310
3,080
3,925
7,580
10,235
The return of Rocco J. Cardone for 1941 was filed on the cash receipts basis. The item "Accrued Payroll" of $295.67, shown on the balance sheet of the corporation as of April 15, 1943, includes the amount of $270 representing accrued wages due Carmella but unpaid as of that date. Opinion VAN FOSSAN, Judge: The respondent determined that the partnership herein involved consisted in 1943 and 1944 of Rocco J. Cardone and Frances Cardone, with respective interests of five-sixths and one-sixth. Accordingly, he included *91 in the 1943 and 1944 taxable income of Rocco J. Cardone hereinafter as to this issue referred to as the petitioner, five-sixths of the partnership income for such years respectively as adjusted by the Commissioner. The petitioner contends that the Commissioner erred in this respect. It is conceded by petitioner that Antoinette and Sarah Cardone, who joined in executing the partnership agreement, are not recognizable as partners for Federal income tax purposes. Although it is argued on brief that, in addition to Frances Cardone, Guiseppina Cardone, petitioner's mother, and Carmella Cardone, petitioner's sister, became partners, the former by contribution to it of her interest represented by the three shares of stock of the predecessor corporation, and the latter, by contribution of unpaid wages of $270 due her by the corporation and her services, the petitioner submits in conclusion that not more than one-half of the partnership income should be attributed to petitioner, one-third to Frances Cardone, and one-sixth to Carmella Cardone. The question to be determined, therefore, is whether the petitioner, their mother, and their sister Carmella really and truly intended to join together *92 for the purpose of carrying on the business and sharing in the profits or losses, or both. (June 27, 1949); . In the Culbertson case, supra, quoting with approval from the Tower case, supra, the Supreme Court stated: "* * * And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' * * *" The petitioner testified that his father, because of failing transferred 339 shares of stock of Suspension Bridge Bottling Co., Ltd., to him upon the verbal understanding that he, as the only other male member of the family, would hold such stock in trust for the rest of the family; that, according to an old Italian custom, children share equally in their father's estate; that Frances similarly held her four shares in trust; that in 1943, because he was subject to be called into the army and he felt that his mother and sisters were entitled to their share in the business, he consulted an attorney and disclosed to him the entire situation; *93 that the attorney, now deceased, advised him to dissolve the corporation and to form a partnership., and that accordingly, the corporation was dissolved and the partnership formed. At a meeting held on April 14, 1949 of the stockholders of the Suspension Bridge Bottling Co., Ltd., a resolution was adopted to dissolve the corporation, to transfer all the fixtures, machinery, equipment, trucks, motor cars and chattels in use in connection with the operation of its business to petitioner and to transfer to petitioner, his mother and four sisters "the assumption by said persons of all of the outstanding obligations of the corporation." On the same day the fixtures and other property designated were transferred by bill of sale to petitioner. In another instrument the remaining property of the corporation was transferred to petitioner, his mother and four sisters as co-partners, who assumed the liabilities and agreed to perform all contract obligations of the corporation. While the evidence is not clear, it appears that the assets transferred to Rocco included at least two items shown on the balance sheet of the corporation as of April 15, 1943; Capital Assets of $2,325.64 and Bottles *94 and Cases of $7,496.96, or a total of $9,822.60. The assets remaining, as shown on the balance sheet, total $25,158.47. However, the outstanding liabilities, exclusive of stock liability, shown on the balance sheet, aggregate $28,813.76, leaving a deficit of $3,655.29. In his petition the petitioner alleges that the investments by the partners in the partnership were as follows: Partner
Investments
Amount
Rocco
$5,358.32, wages due him by, and his stock of, the corporation
$ 8,603.28
Frances
$5,168.37, wages due her by, and her stock of, the corporation
5,795.97
Carmella
$270.00, wages due her by the corporation and services
897.59
Guiseppina
Stock of the corporation
627.60
Sarah
627.59
Antoinette
627.59
Total
$17,179.62 No evidence was adduced to substantiate such allegations. If the value of the assets contributed by the partners was $17,179.62, it is to be noted that the liabilities as shown on the balance sheet of April 15, 1943, exclusive of stock liability and the unpaid wages due Rocco, Frances and Carmella, were $17,827.12, or $647.50 in excess of the total value of the alleged investments. Furthermore, from the partnership agreement *95 it appears that the partners appraised and valued the "gross assets" of the partnership at $6,000. If the assets remaining after the transfer to petitioner in the total amount of $25,158.47 had only a gross value of $6,000, the partnership at the outset had a deficit of $11,827.12, since the liabilities assumed amounted to $17,827.12. The partners, therefore, owned no equity whatever in the assets of the corporation transferred to the partnership. No new capital was contributed by any of the partners. Presumably, the liabilities were, as theretofore, to be paid from funds acquired through the continued operation of the business and not by the partners. There is no showing that any of them had financial resources with which to pay the assumed liabilities of the corporation. There is no evidence showing exactly how the partnership and the interests of the partners were set up. The partnership books, if any, were not adduced in evidence. None of the partners testified except petitioner and Frances. Their testimony was vague and wholly unconvincing. Frances was not questioned in detail as to the partnership. Her testimony was principally directed to the item of $5,358.32 included by *96 the respondent in her taxable income for 1943. She was unable to recall when or from whom she had received the four shares of stock. Apparently she considered the stock as her own and not subject to a trust as testified by petitioner. She claimed in her 1943 income tax return a capital loss resulting from the exchange of the stock for a partnership equity, which the Commissioner disallowed. The adjustment is not in controversy. The petitioner testified that he and Frances conducted the business and that the machinery and equipment which had been transferred to him by the corporation were used in the operation of the business. The business could not have been carried on without the use of such machinery and equipment. The profits were, therefore, derived through the efforts of petitioner and Frances and from the use of machinery and equipment owned by petitioner. It is well established that income is taxed to him who earns it. It is true that Carmella also worked in the business, but there is no evidence showing that she was actually treated as a partner by either petitioner or Frances. The clear inference is she was merely a paid employee. Although petitioner testified that prior *97 to his father's death and thereafter his mother was supported by the business, there is no evidence showing that any funds were paid to or withdrawn by the mother from the business as a matter of right. So far as the record discloses, if her support came from the business, it was through funds received by petitioner, Frances and/or Carmella as compensation for services. No funds were paid to the mother as compensation for services or as profits of the business. In our opinion, the petitioner did not truly intend to operate the business as a partnership with his mother and sister Carmella, and it was not so operated in 1943 and 1944. Nor has the petitioner shown that the Commissioner erred in attributing to him five-sixths of the partnership income. By taking over the machinery and equipment required in the conduct of the business and retaining control in himself as manager in sole charge of the operation of the business, he was in substance and effect the owner of the greater part thereof. In any event there is no evidence which would justify a different distribution of the partnership income. The next question to be considered is whether the Commissioner erred in including in *98 the taxable income for 1943 of each petitioner the amount of $5,358.32. The petitioners contend that each of them constructively received in years prior to 1943 amounts aggregating $5,358.32 and paid income taxes on the unpaid salary when accrued by the corporation. In their respective petitions each petitioner alleged that the amount of $5,358.32 "represents the collection of unpaid wages which the petitioner received from the corporation in 1943." In petitioners' proposed findings of fact it is stated that the item "'Due Officers' on the balance sheet of $10,716.64 represents accrued salary due officers of the corporation, and as a result of the dissolution of the corporation $5,358.32 was received by Rocco Cardone and $5,358.32 was received by Frances Cardone in the year 1943." When asked to tell about the origin of the item of $10,716.64, Rocco Cardone testified as follows: "Well, that comes about, the thing we were using was a drawing account and whatever unused money that we set up as a salary was left in the business to sort of build our assets up in order to do business at that particular time, and I think that goes back a few years - back, I remember one incident, *99 I think as much as I can possibly recollect, a $1300 item that I believe was what I had loaned to the company at that time. Others have been in different amounts." He further testified that he thought the $1,300 item was not withdrawn in 1941 and that he believed that there was a similar item for his sister Frances in that year of $400. When asked whether he could have withdrawn the unpaid salary in the year of accrual, he relied as follows: "We couldn't draw it. We were trying to increase our assets in order to conduct our business." It is stated in , that: "The doctrine of constructive receipt treats as taxable, income which is unqualifiedly subject to the demand of a taxpayer on the cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash. * * *" See also ; ; and . While it is indicated that the petitioners may have filed their returns prior to 1943 on the cash receipts basis, there is no evidence that their returns were filed on an accrual *100 basis. There is no evidence that the unpaid salary when accrued on the books of the corporation was unqualifiedly subject to their demand. On the contrary, it appears that the salaries could not be withdrawn in full. Except for the $1,300 and $400 items (as to which the proof is not clear) there is no evidence as to the years in which the remainder of the amount involved was accrued and unpaid, or of the salary reported each year. Although Frances kept the books of account, her testimony was vague and evasive. She finally stated: "I don't know exactly what it was amounted to. I know the money I had coming was in the company. All my money was in the company. I don't know how much I have coming." Neither accounts of the corporation in which each petitioner was credited with the unpaid salary, nor the returns of petitioners, were offered in evidence, although respondent offered to produce the originals of the latter. The petitioners, having failed to sustain their burden of proof, the action of the respondent in including in the taxable income of each petitioner for 1943 the amount of $5,358.32, admittedly received in that year, must be approved. Decision will be entered for the *101 respondent. Footnotes
*. The returns filed by the new corporation covering the periods January 1 to April 30, and May 1 to December 31, 1942, respectively, disclose that Rocco owned 98 shares and Frances one share of the stock of the corporation.↩